JEAN REDDINGTON *vs.* MORRIS CLAYMAN.

Suffolk.    March 7, 1956. — June 1, 1956.

Present: QUA, C.J., RONAN, COUNIHAN, & WHITTEMORE, JJ.

*Physician and Surgeon. Damages, For tort, Nominal damages. Actionable Tort. Negligence, Violation of law. Assault. Practice, Civil, Ordering verdict. Evidence, Medical publication.*

There could be no recovery by a patient against a surgeon based on negligence in removing the patient's uvula in the course of an operation for removal of tonsils and adenoids where there was no evidence that the removal of the uvula was other than intentional. [245]

Violation by a surgeon of statutes respecting maintaining a clinic or dispensary would not support a cause of action for negligence in removing a patient's uvula during an operation where there was no causal connection between the violation and such removal. [245]

Evidence warranted a finding that an intentional removal of a patient's uvula by a surgeon during the course of an authorized operation for removal of tonsils and adenoids was not consented to expressly or by implication from the authority given for the operation, and was unauthorized. [245–247]

The direction of a verdict for the defendant in an action against a surgeon for an intentional and unauthorized removal of the plaintiff's uvula during an operation would not be supported on the ground of lack of evidence of actual damage since the plaintiff would be entitled to nominal damages. [247]

There was no error in the exclusion of a medical treatise sought to be introduced in evidence under G. L. (Ter. Ed.) c. 233, § 79C, inserted by St. 1949, c. 183, § 1, by the plaintiff in an action against a surgeon where there was nothing offered to show the writer's professional standing as an expert other than biographical data in the front of such treatise and in a "Directory of Medical Specialists" and a "Who's Who" offered by the plaintiff for judicial notice. [247]

TORT.    Writ in the Superior Court dated October 1, 1951.

The action was tried before *Beaudreau*, J., who ordered a verdict for the defendant on each of the three counts of the declaration.    The plaintiff alleged exceptions.

*J. Sherman Rogan*, for the plaintiff.

*Edmund L. Twomey*, (*Herbert P. Wilkins* with him,) for the defendant.

WHITTEMORE, J.    The plaintiff, a minor, brought this

action of tort against a physician to recover for injuries alleged to have been sustained in the course of an operation for the removal of the plaintiff's tonsils and adenoids. It is undisputed that the plaintiff's uvula was removed in the course of the operation.

The verdicts for the defendant were properly directed on the first two counts which were for negligence. The theory of the plaintiff's case under these counts was negligent removal of the uvula in the course of removing tonsils and adenoids. There was no evidence of unintentional removal of or injury to the uvula. The only relevant testimony on this point was from the defendant. He testified that he intentionally removed the uvula after telling the plaintiff's parents that he would do so and why. There is no evidence that in performing the operation he did not conform to the standard of care required of physicians in the circumstances. *Vartanian* v. *Berman,* 311 Mass. 249, 253. *Semerjian* v. *Stetson,* 284 Mass. 510, 512–513. *Bouffard* v. *Canby,* 292 Mass. 305. *Chesley* v. *Durant,* 243 Mass. 180, 182.

If there was, as the plaintiff contends, a violation of the statute in respect of the defendant's maintaining a clinic or dispensary (G. L. [Ter. Ed.] c. 111, § 51, as appearing in St. 1943, c. 16, § 1; §§ 52, 56), there was shown no causal relationship between such violation and the complained of acts. *Deignan* v. *Lubarsky,* 318 Mass. 661, 664. See cases cited in *Milbury* v. *Turner Centre System,* 274 Mass. 358, 363–364.

The third count was for unauthorized removal of the uvula. The plaintiff's father testified that the defendant advised removal of the plaintiff's adenoids and tonsils. He denied that he authorized the defendant to remove or touch any other part of his daughter's mouth. The plaintiff's mother testified that a month before the operation the defendant suggested the removal of the plaintiff's tonsils but did not mention adenoids or uvula. The defendant testified that he was a general practitioner who did a great deal of surgery; that he had intentionally removed an uvula two or three times, the last time about ten years before because

of a suspicious lesion; that here there was a background of cancer of the throat in the plaintiff's brother, which had "initiated . . . apparently, in the uvula, and ending in death . . . we do know that some families . . . have more of a tendency . . . to cancer than others; . . . with that history . . . [and] especially where we have an elongated uvula that's causing a continuous hacking cough, where the youngster can't eat well and can't sleep well and is losing weight and has a secondary anemia with it — under those cases, that uvula should [be] and was removed"; and that he removed it "after he had explained to the child's parents very carefully that the uvula is an elongated substance, a vestigial structure . . . with absolutely no function . . . [and that] it should be removed" there being the stated history of cancer. The defendant testified also that at that time he had read to the plaintiff's mother an article by a throat specialist which proved definitely that the uvula is a remnant tissue with no function and a background for germs. The father testified that a week after the operation he asked the defendant "what had happened to the child's palate, that 'it was not there'" and that the defendant replied that the father "referred to the uvula; that he had not touched the uvula; that it had shrunk and that it would come back to normal in a few days . . . ."

On the testimony taken most favorably for the plaintiff, the defendant had authority to do whatever was implied in the consent given to remove adenoids and tonsils. It could not be ruled that consent to the removal of the uvula in the circumstances was necessarily implicit in the authority given. There was no medical testimony that it was usual to do this. There was no suggestion that the defendant found anything when operating which made it reasonable then forthwith to remove the uvula as a part of what was being done. On the contrary the defendant stood expressly on what he saw and learned prior to the operation. The little relevant testimony shows the defendant dealing with this as an operative act which was additional to the removal of tonsils and adenoids in usual course and was carefully explained as

such to the assenting parents. We think therefore that it was a jury question whether the defendant had authority to remove the uvula and that the verdict was wrongly directed under count 3. Even if there was a lack of evidence, as the defendant contends, of connection between the plaintiff's post operative troubles and loss of the uvula (and we do not pass on this), the plaintiff was entitled to at least nominal damages for such an unauthorized act. *Wood* v. *Cummings,* 197 Mass. 80, 85.

There was no error in the exclusion of the medical treatises offered by the plaintiff. Under G. L. (Ter. Ed.) c. 233, § 79C, inserted by St. 1949, c. 183, § 1, "A statement of fact or opinion on a subject of science or art contained in a published treatise, periodical, book or pamphlet shall, in the discretion of the court, and if the court finds that it is relevant and that the writer of such statement is recognized in his profession or calling as an expert on the subject, be admissible in actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists, optometrists, hospitals and sanitaria, as evidence tending to prove said fact or as opinion evidence; provided, however, that the party intending to offer as evidence any such statement shall, not less than three days before the trial of the action, give the adverse party notice of such intention, stating the name of the writer of the statement and the title of the treatise, periodical, book or pamphlet in which it is contained." Manifestly the biographical data in the front of the book itself, to which the plaintiff referred, was not a "statement of fact or opinion on a subject of science or art" and could not serve as the basis of the judge's finding that the writer of a relevant statement in the text has the required professional standing. See Wigmore, Evidence (3d ed.) § 1694.

The offer of the Directory of Medical Specialists and of an English edition of Who's Who (1946) to vouch the professional standing of the authors and the text was not supported by § 79C for the reasons stated. There is no basis for asking the court to take judicial notice of these books

(*Mady* v. *Holy Trinity Roman Catholic Polish Church*, 223 Mass. 23, 26; *Duarte, petitioner*, 331 Mass. 747). These books were not offered below under G. L. (Ter. Ed.) c. 233, § 79B, inserted by St. 1947, c. 385, § 1 (*Rothwell* v. *First National Bank*, 286 Mass. 417, 422; *Mendelsohn* v. *Leather Manuf. Corp.* 326 Mass. 226, 238), so there was no opportunity for the judge to make the necessary preliminary findings under that statute that they were compilations issued to the public and published for the use of persons engaged in the particular occupation and commonly used and relied on. Such compilations conceivably might by their own statements show that they are issued to the public for a stated use, but it would appear necessary, at least in the usual case, that there be some independent evidence that they are commonly used and relied on to permit such a finding to be made. See *Boston Consolidated Gas Co.* v. *Department of Public Utilities*, 327 Mass. 103, 108, and master's report in the original papers; Wigmore, Evidence (3d ed.) §§ 1694, 1706, and cases cited.

> *Exception to direction of a verdict under count 3 sustained; all other exceptions overruled.*