ELIZABETH  K. MAZZARO & another[1] vs. THOMAS PAULL.

Middlesex.    December 9, 1976. — June 2, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Evidence,* Medical publication. *Medical Malpractice. Negligence,*
Medical malpractice.

In an action for medical malpractice, there was no error in the exclu-
sion of a directory of medical specialists where the plaintiff made no
offer of proof with respect to the contents of the directory, did not
have it marked as an exhibit, failed to inform the court of G. L.
c. 233, § 79B, and did not seek to establish that the directory was
anything other than a collection of unverified self-serving statements.
[646-653]

TORT.    Writ in the Superior Court dated February 2,
1968.

The action was tried before *Leen,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Jacob J. Locke* for the defendant.

*I. Francis Gregory & Howard J. Alperin,* for the plain-
tiffs, submitted a brief.

QUIRICO, J.   The plaintiffs, wife and husband, appeal
from jury verdicts for the defendant physician on claims
for injuries to the wife and consequential damages to the
husband resulting from the physician's alleged negligence
in the performance of a hysterectomy operation. The ap-
peal was entered in the Appeals Court, and we transferred
the case here. G. L. c. 211A, § 10 (A).

The sole issue presented is the validity of the trial
judge's exclusion from evidence of a copy of the Directory
of Medical Specialists (directory), also known as Marquis

---

[1] Victor Mazzaro, husband of Elizabeth K. Mazzaro.

Who's Who, Inc., which the plaintiffs sought to introduce to establish the expertise of authors of various medical treatises. We find there was no error in the exclusion, and therefore affirm the judgments for the defendant.

The plaintiffs did not present evidence bearing on negligence through the testimony of expert witnesses; they rather sought to obtain such evidence by examining the defendant, and also intended to submit statements from various medical treatises or textbooks under G. L. c. 233, § 79C.[2] Because the statute requires "that the writer of such statements [be] recognized in his profession or calling as an expert on the subject," the plaintiffs sought to elicit from the defendant whether he was familiar with the authors of certain medical treatises and whether such authors were recognized in their field as experts. The defendant had not heard of several of the authors of the treatises; he was unwilling to express any view on the qualifications or training of those he had heard of. Thus, the plaintiffs were unable to supply directly the necessary authentication of expertise of the authors of the treatises through the testimony of the defendant.

Later in the trial, the plaintiffs' counsel continued the

[2] General Laws c. 233, § 79C, as appearing in St. 1965, c. 425, provides as follows: "Statements of facts or opinions on a subject of science or art contained in a published treatise, periodical, book or pamphlet shall, in so far as the court shall find that the said statements are relevant and that the writer of such statements is recognized in his profession or calling as an expert on the subject, be admissible in actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists, optometrists, hospitals and sanitaria, as evidence tending to prove said facts or as opinion evidence; provided, however, that the party intending to offer as evidence any such statements shall, not less than thirty days before the trial of the action, give the adverse party or his attorney notice of such intention, stating the name of the writer of the statements, the title of the treatise, periodical, book or pamphlet in which they are contained, the date of publication of the same, the name of the publisher of the same, and wherever possible or practicable the page or pages of the same on which the said statements appear." Discussions of the legislative history and background of the statute are found in Goldman, Malpractice Cases in Massachusetts, 40 Mass. L.Q. (No. 2) 27-40 (1955), Goldman, Proof and Procedures in Malpractice Cases, 40 Mass. L.Q. (No. 3) 18-26 (1955), and Kehoe, Massachusetts Malpractice Evidentiary Statute — Success or Failure? 44 B.U. L. Rev. 10 (1964).

direct examination of the defendant and brought to his attention a Directory of Medical Specialists, which was said to be known as Marquis Who's Who, Inc., vol. 2, dated 1963-1964. The defendant's counsel objected. After the colloquy quoted in the margin,[3] the judge excluded

---

[3] COUNSEL FOR THE DEFENDANT: "The defendant objects to reference to the directory which he has just brought to the witness stand and placed before the witness on the ground that no questions of the contents of that book should be admissible without medical foundation for their admissibility."

THE JUDGE: "What do you say about that?"

COUNSEL FOR THE PLAINTIFFS: "I say at this point I think the objection is unfounded.

"However, I am going to attempt to introduce through this book the expertise of the various authors by their qualifications, their degrees, their experience, as listed in the book, and I am going to question the Doctor with regard to their qualifications and expertise listed in this book and whether he thinks they qualify as experts in the particular field."

THE JUDGE: "You are going to question him with regard to the doctors you referred to the other day?"

COUNSEL FOR THE PLAINTIFFS: "That is correct."

THE JUDGE: "On the basis of his answers to which you asked him last week?"

COUNSEL FOR THE PLAINTIFFS: "That is correct."

THE JUDGE: "You wouldn't say they were admissible, would you?"

COUNSEL FOR THE PLAINTIFFS: "I agree, on the answers he gave last week."

THE JUDGE: "Then what you are saying in effect is because they are listed in this book, this directory, that regardless of what the Doctor says in his answers, therefore these treatises become admissible?"

COUNSEL FOR THE PLAINTIFFS: "Should be admissible and prima facie evidence."

THE JUDGE: "I don't agree with you, Mr. Gregory. This directory, there is no showing as to how this directory is compiled, whether this is done by some experts, so called, or specialists in the field who pick out certain people and say these people are specialized and then I would want to know who they were and what qualifications they had to make such a — I suspect and I don't know, and this is what is bothering me, and I think I should put it in the record, that this directory is like a lot of other directories, they simply write to people in various professions or businesses, whatever it may be, like Who's Who and Who's Who in this and the other thing and people write in and they write their own ticket, so to speak. They give their own resume of what their qualifications are and so in a sense I suppose they are really self serving statements by these people.

"Now, the fact they are compiled in a directory doesn't give them any greater standing than if they were just individual pieces of paper, as far as this Court can see, and that is the reason for the exclusion."

COUNSEL FOR THE PLAINTIFFS: "Your Honor, all I can say is this:

Mazzaro *v.* Paull.

the directory. There was no offer of proof relating to the contents of the directory; it was not marked as an exhibit; and the plaintiffs did not ask the judge to make any preliminary findings of fact regarding the directory.

The only question before us is whether it was error to exclude the directory from which, it may be assumed, the plaintiffs sought to show that various authors of medical treatises were recognized experts and that the treatises would therefore be admissible under G. L. c. 233, § 79C. No question of the ultimate admissibility of the treatises is presented in this case[4] because the plaintiffs were unable to pass the threshold test of establishing the expertise of the authors. Nonetheless, the exclusion at issue must be considered in the context of a remedial legislative mandate (G. L. c. 233, § 79C) to permit the introduction of authoritative medical texts and thereby overcome the longstanding obstacle of the hearsay rule.[5]

---

There is no self assertion in there with regard to the individual. It is just a record of their degrees and their training, and if the Doctor was allowed to testify or be cross examined with regard to this particular area, I believe that it might be found from his testimony that he agrees that they have expertise within the particular area, and as a result if I can get such an admission from the Doctor then I believe I should be able to introduce the particular treatises which I intended to introduce last week."

THE JUDGE: "Do you want to say anything further?"

COUNSEL FOR THE DEFENDANT: "Only that the statute clearly calls for physicians who are generally recognized by members of their profession and specialty to be authorities in their field.

"Now, the fact that another one has his name listed in a book of this sort and it says he went to Harvard College and then he went to Harvard Medical School and then he got his Board in a certain specialty doesn't satisfy me that he is recognized as an authority in this field."

COUNSEL FOR THE PLAINTIFFS: "It might satisfy the Doctor since he is also listed in the particular book."

THE JUDGE: "I don't think it is proper and I am going to exclude it and your rights of course are saved."

[4] There was no offer of proof as to the treatises. Further, the plaintiffs did not ask the trial judge judicially to notice the treatises. The disembodied claim now pressed — that judicial notice of medical treatises should be permitted — has no basis in any claim of error in the record and will not be addressed by this court.

[5] See *Percoco's Case,* 273 Mass. 429, 430-431 (1930) ("The admission of this medical treatise was error. . . . To permit such evidence is to admit in evidence the statement of one, made out of court, not subject to

Mazzaro *v*. Paull.

While the plaintiffs did not urge upon the trial judge any particular grounds of admissibility of the directory, in this court they contend that it should have been admitted under G. L. c. 233, § 79B.

General Laws c. 233, § 79B, inserted by St. 1947, c. 385, § 1, provides that "[s]tatements of facts of general interest to persons engaged in an occupation contained in a list, register, periodical, book or other compilation, issued to the public, shall, in the discretion of the court, if the court finds that the compilation is published for the use of persons engaged in that occupation and commonly is used and relied upon by them, be admissible in civil cases as evidence of the truth of any fact so stated."

This statute appears to have been based to some extent on Rule 528 of Model Code of Evidence (1942). See Eighteenth Report of the Judicial Council (December, 1942), 28 Mass. L.Q. (No. 1) 23-24 (1943); Twenty-First Report of the Judicial Council (December, 1945), 30 Mass. L.Q. (No. 4) 56 (1945); Twenty-Second Report of the Judicial Council (February, 1947), 32 Mass. L.Q. (No. 1) 78-79 (1947). The Judicial Council, in its several annual reports cited above, urged passage to permit the introduction of newspaper reports of market prices, city and telephone directories and the like, to modify the rule of exclusion stated in *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257 (1900). In that case, Chief Justice Holmes, for the court, held that newspaper reports of stock quotations were inadmissible hearsay. *Id.* at 261.[6] See *Doherty*

---

cross-examination"). *Allen* v. *Boston Elevated Ry.*, 212 Mass. 191 (1912). *Commonwealth* v. *Jordan*, 207 Mass. 259, 271 (1911), aff'd 225 U.S. 167 (1912). *Commonwealth* v. *Marzynski*, 149 Mass. 68, 72 (1889). *Commonwealth* v. *Brown*, 121 Mass. 69, 81 (1876). *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 139 (1875). *Washburn* v. *Cuddihy*, 8 Gray 430, 431 (1857). *Commonwealth* v. *Wilson*, 1 Gray 337, 338-339 (1854). *Ashworth* v. *Kittridge*, 12 Cush. 193 (1853) (Shaw, C.J.). 6 J. Wigmore, Evidence §§ 1690-1700 (Chadbourn rev. 1976). Cf. *Murawski* v. *Laird*, 330 Mass. 599 (1953); *Thomas* v. *Ellis*, 329 Mass. 93, 98-100 (1952).

[6] See G. L. c. 106, § 2-724, the Uniform Commercial Code, inserted by St. 1957, c. 765, § 1, which provides for the admissibility of "reports in official publications or trade journals or in newspapers or periodicals of general circulation published as the reports of such [established commodity] market . . . ."

v. *Harris*, 230 Mass. 341 (1918) ("The Commercial Bulletin," a trade journal publishing prices of goods, excluded). The sketchy legislative history contained in the reports of the Judicial Council and the comment to rule 528 does not expressly mention professional directories such as the one at issue.

The rationale for this limited exception to the hearsay rule is twofold. First, admitting commercial lists and registers is necessary because of the inaccessibility of the authors and compilers, and the practical inconvenience in summoning them. 6 J. Wigmore, Evidence § 1702 (Chadbourn rev. 1976). Second, the trustworthiness of such lists is assured through general reliance on them by those in a particular profession, and the consequent motivation of the compiler to foster this reliance by his accuracy. 6 J. Wigmore, *supra*. See Fed. R. Evid. 803 (17); 4 J.B. Weinstein's Evidence, par. 803 (17) [01] (1976); Note, Commercial Lists, 46 Iowa L. Rev. 455 (1961).

Two of our prior cases have touched on the admissibility of a professional directory under G. L. c. 233, § 79B. In *Reddington* v. *Clayman*, 334 Mass. 244 (1956), this court found no error in the exclusion of medical treatises offered by the plaintiff under G. L. c. 233, § 79C. The problem in that case, as in this one, was compliance with the statutory requirement that the writer of the treatise be "recognized in his profession or calling as an expert." The court first rejected the claim that biographical data in the front of the book itself could permit the judge to find this preliminary question of fact. *Id.* at 247. The court then discussed the method of proof at issue here: "The offer of the Directory of Medical Specialists and of an English edition of Who's Who (1946) to vouch the professional standing of the authors and the text was not supported by [G. L. c. 233] § 79C . . . . There is no basis for asking the court to take judicial notice of these books . . . . These books were not offered below under G. L. . . . c. 233, § 79B . . . so there was no opportunity for the judge to make the necessary preliminary findings under that statute that they were compilations issued to the public and published

for the use of persons engaged in the' particular occupation and commonly used and relied on. Such compilations conceivably might by their own statements show that they are issued to the public for a stated use, but it would appear necessary, at least in the usual case, that there be some independent evidence that they are commonly used and relied on to permit such a finding to be made" (citations omitted). *Id.* at 247-248. Several points in the discussion are relevant here. First, where the trial judge was not informed about G. L. c. 233, § 79B, he could not make the findings which were the prerequisite foundation for admitting the directory. Second, independent evidence of the statutory requirements of common use and reliance was called for. Third, judicial notice was deemed inappropriate. In these circumstances, this court did not decide the admissibility of the directory under G. L. c. 233, § 79B.

In *Ramsland* v. *Shaw*, 341 Mass. 56, 63-64 (1960), the plaintiff sought to introduce excerpts from a medical treatise under § 79C, and sought to establish the necessary preliminary finding of the expertise of the author through the testimony of the city librarian of Lowell who produced a 1957 edition of "Who's Who." On exception, the portions of the treatise and the "Who's Who" which were excluded were made part of an offer of proof. The trial judge, in the exercise of his discretion, excluded the treatise and the "Who's Who" excerpt.

This court did not decide whether the "Who's Who" excerpt was admissible.[7] The court commented, however,

---

[7] The treatise was published in England and its author was English. Under then prevailing law, a doctor's conduct was tested by the standards of care and skill prevailing in the community where he practiced. The court said the "Who's Who" evidence "would have established no more than that... [the doctor] was a recognized expert in the field of anesthesia as it is practised in England. This would not have cured the infirmity in the evidence which was the basis for the judge's ruling, namely, the possible differences in anesthesia techniques in England and the locality here involved." *Ramsland* v. *Shaw,* 341 Mass. 56, 65 (1960). The court suggested, but did not decide, that the "Who's Who" excerpt could establish expertise. The "locality" rule of *Small* v. *Howard,* 128 Mass. 131 (1880), applied in *Ramsland* v. *Shaw, supra,* was overruled in *Brune* v. *Belinkoff,* 354 Mass. 102 (1968).

that "[s]uch evidence, of course, would not be admissible at common law. . . . Its admissibility must be found in G. L. c. 233, § 79B." *Id.* at 64.

It may well be that these two cases, as commentators have asserted,[8] have made introduction of medical treatises difficult. Yet our past cases have not foreclosed the use of a factual compilation under G. L. c. 233, § 79B, as a means of establishing the authentication and expertise of medical treatises under G. L. c. 233, § 79C. Section 79B requires, at the minimum, persuading the trial judge to make the preliminary findings that the proposed exhibit is (1) issued to the public, (2) published for persons engaged in the applicable occupation, and (3) commonly used and relied on by such persons. See *Ricciutti* v. *Sylvania Elec. Prods. Inc.*, 343 Mass. 347, 350 (1961). We think "compilation," as used in the statute, connotes simple objective facts, and not conclusions or opinions. Perhaps the most expeditious means of satisfying these requirements would be by the testimony of a physician who used and relied on the directory, but there would no doubt be other means. If the plaintiffs had satisfied these threshold requirements, the trial judge in his discretion could have admitted the directory in issue.

Yet in this case, there was no offer of proof relating to the proffered contents of the directory, nor was it marked as an exhibit.[9] Furthermore, the plaintiffs did not refer to any common law or statutory basis for permitting the directory to be introduced in evidence. The plaintiffs did not inform the court of G. L. c. 233, § 79B, the statute on which they now claim error, nor did they assert or seek

[8] See K.B. Hughes, Evidence § 622 (1961); Kehoe, Massachusetts Malpractice Evidentiary Statute — Success or Failure? 44 B.U.L. Rev. 10 (1964); Seidelson, Medical Malpractice Cases and the Reluctant Expert, 16 Catholic U.L. Rev. 158, 169-171 (1966); 1956 Ann. Survey Mass. Law § 22.6; Note, Overcoming the "Conspiracy of Silence": Statutory and Common-Law Innovations, 45 Minn. L. Rev. 1019, 1029-1031 (1961).

[9] The directory was, as a consequence, not made part of the record on appeal. We have not had the benefit of knowing anything more about it than its title in our review of the judge's decision.

to establish that the directory was anything other than a collection of unverified self-serving statements as suggested by the trial judge.

On this state of the record, it was not error to exclude the directory. See *Ricciutti* v. *Sylvania Elec. Prods. Inc., supra* at 351; *Reddington* v. *Clayman, supra* at 248. Yet we do not suggest that it would have been error to admit it. A professional directory that was the authorized publication of medical boards, which verified or certified the information contained therein, or was based on adequate investigation and authentication, would be admissible under G. L. c. 233, § 79B. The matter is entrusted by statute to the discretion of the trial judge, who should consider the remedial purpose of § 79C, and who should not frustrate legitimate attempts to qualify authoritative treatises through § 79B.

The trial judge had no way of knowing whether the Directory of Medical Specialists satisfied these requirements and was provided with no basis for making preliminary findings of fact. His exclusion was not error. While the plaintiffs now argue that the trial judge should have permitted further inquiry before excluding the exhibit, the colloquy quoted above shows that the plaintiffs provided no intimation that further inquiry would have been productive.

*Judgments affirmed.*