Swan, J.
Gitane Dalencourt was injured in an accident in a motor vehicle insured by Liberty Mutual Insurance Company (“Liberty”). He was treated by N.E. Physical Therapy Plus, Inc. (“NEPT”)- As an unpaid party, NEPT submitted a claim for its services to Liberty for the payment of personal injury protection (“PIP”) benefits under G.L.c. 90, §34M. The claim was for $4,465.00. Liberty paid what it determined to be reasonable, $3,730.68. NEPT sued Liberty for the balance of $734.32, alleging a breach of contract under G.L.c. 90, §34M and violations of G.L.c. 93A, §11. After a jury-waived trial, the judge found for NEPT on its §34M PIP claim, and awarded the $734.32 amount sought, plus attorney's fees, but found for Liberty on the G.L.c. 93A claim. Liberty has appealed the PIP judgment.[1]
The trial judge wrote extensive findings and concluded that the bills submitted by NEPT and admitted into evidence under G.L.c. 233, §79G were reasonable in amount. Liberty claims that the trial court erroneously denied Liberty’s motion in limine and excluded evidence of the database prepared by Ingenix, Inc. (“Ingenix”) for the purpose of showing that the unpaid amounts sought by NEPT were not reasonable charges for the services provided. Liberty offered the Ingenix data under the commercial list exception to the hearsay rule set forth in G.L.c. 233, §79B, which provides:
Statements of facts of general interest to persons engaged in an occupation contained in a list, register, periodical, book or other compilation, issued to the public, shall, in the discretion of the court, if the court finds that the compilation is published for the use of persons engaged in that occupation and commonly is used and relied upon by them, be admissible in civil cases as evidence of the truth of any fact so stated.
*136 This rule is restated verbatim in the Massachusetts Guide to Evidence. See Mass. G. Evid. §803(17) & note, at 267 (2011). In deciding whether proffered evidence is admissible under §79B, the trial judge must determine whether the evidence contains statements of facts, issued to the public, published for persons engaged in the applicable occupation, and commonly used and relied on by such persons. Mazzaro v. Paull, 372 Mass. 645, 652 (1977).
In denying Liberty’s motion to admit the Ingenix data, the trial judge simply made reference to Michael Davekos, P.C. v. Liberty Mut. Ins. Co., 2008 Mass. App. Div. 32. In that case, this Division reversed a judgment on the grounds that Ingenix data had been erroneously received into evidence under the business records exception to the hearsay rule, G.L.c. 233, §78. Specifically, we held that while the proffered evidence fulfilled the initial requirements of the exception, it lacked the necessary indi-cia of reliability to be admissible, failing as it did to “show that all persons in the chain of communication, from the observer to the preparer, reported the information as a matter of business duty or business routine.” Id,., quoting Wingate v. Emery Air Freight Corp., 385 Mass. 402, 406 (1982).[2] What Liberty claims to be erroneous is the trial judge’s alleged consideration of admissibility on the basis of Davekos, rather than of §79B. The record does not indicate, however, that the judge either ignored, or overlooked, the provisions of §79B. Indeed, quite the contrary is true.
Our inquiry must begin with what was requested by Liberty. Both Liberty in proffering the Ingenix data, and NEPT in opposing it, discussed Davekos at length. Liberty argued that Davekos involved the business records exception to the hearsay rule, under which Liberty was not proceeding and which was, therefore, inapplicable. NEPT argued that Davekos has broader implications than the business records exception, and that the Ingenix data was held inadmissible because of its unreliability. Thus, Liberty’s motion did not address the analysis of the Ingenix data in Davekos,[3] where this Division determined that Ingenix did “not collect its own billing data, and did not undertake any verification of the accuracy of the particular data Liberty introduced,” and instead relied “on its ‘data contribution program’ in which some, but not all, of only those health insurers that are Ingenix clients submit information, on a purely voluntary basis, about the amounts they happen to have been billed by an undisclosed number of unidentified health care providers for specific [chiropractic] services.” While Ingenix required participating clients to certify the accuracy of the number and amounts of the chiropractic billings they submitted, Ingenix had no “mechanism to enforce or validate the client certificates.” Although Ingenix claimed that it undertook “occasional audits” of the data it received, there was no evidence “of when such an audit had last been made.” And while the “billing *137 data volunteered by some of its clients" listed chiropractic service code numbers, bill amounts, dates of service, and the providers’ zip codes, it failed to “name, or otherwise identify, the medical providers who billed Ingenix insurer clients” or “disclose the total number of providers whose charges may make up the Ingenix database at any point.” The record in Davekos further established that Ingenix could not “guarantee that all of the bills received for a particular [chiropractic] service at any given time [had] been reported, much less accurately reported, by its volunteer insurers,” or even ascertain whether the bills listed constituted “the unnamed providers’ usual and customary charges for the service, or, instead, a discounted rate required by the agreements one or more of the providers may have had with health care insurers.” By its own admission, Ingenix remained “‘at the mercy’ of its voluntary data contributors with respect” to reporting accurate and complete information, and in the end even disclaimed approval of the data in its products.[4] Thus, this Division concluded that nothing in the Davekos record established “the accuracy or reliability of Ingenix’s raw data, and, thus, its statistical extrapolations.” Id, at 34.
Other than presenting an affidavit of an Ingenix employee proclaiming its many products and office locations and thousands of users and customers, Liberty produced nothing to contradict the conclusions in Davekos, or to amplify the verity of its evidence. In its most explicit description of the database, the affidavit stated: “Ingenix employs a relative value and conversion factor methodology that permits Ingenix to model less-frequently performed services using the provider data and charging patterns from more-frequently performed services in the same geographic area and time period.... The Ingenix data result from the application of a mathematically reproducible methodology to bill-charge data acquired by Ingenix.” Notwithstanding this statistical methodology, there is nothing in the affidavit to contradict the evidence in Davekos that Ingenix, in acquiring the raw data, ultimately remains “at the mercy” of its data contributing volunteers. Finally, it would appear that Liberty did not even submit the proffered evidence itself to the trial judge for examination; clearly, none has been included in the record on this appeal. See Torre v. Harris-Seybold Co., 9 Mass. App. Ct. 660, 673 (1980).[5]
In his findings, the trial judge expanded upon his earlier ruling denying the *138 motion in limine, noting that Davekos held “that Ingenix’s records are not admissible to establish the truth of the underlying hearsay they contain” (emphasis added). As above noted, the first criterion for a commercial list to be admissible is that it be a “compilation” of “[s]tatements of facts.” G.L.c. 233, §79B. The word “‘compilation,’ as used in the statute, connotes simple objective facts, and not conclusions or opinions.” Mazzaro, supra at 652. A compilation of facts consists of such things as “newspaper reports of market prices, city and telephone directories and the like,” id. at 649, or “reports in official publications or trade journals or in newspapers or periodicals of general circulation published as the reports of’ an “established commodity market” to show “the prevailing price or value of any goods regularly bought and sold” in such market. G.L.c. 106, §2-724. By contrast, statements of opinion are not admissible. See Fall River Sav. Bank v. Callahan, 18 Mass. App. Ct. 76, 83-84 (1984) (“title standards [of the Massachusetts Conveyancers’ Association] are expressions of professional opinion” and, thus, inadmissible under §79B); Torre, supra at 668-669, 673 (likewise, “resolution of approval concerning the type of machine in question by the Board of Standards and Appeals of the State of New York”).
As indicated in Davekos, the unverified voluntary contributions of raw data, statistically analyzed and manipulated and ultimately disclaimed by Ingenix, resulted in billing data founded on little more than conclusions or opinions, and certainly not objective facts. No further findings by the trial judge were necessary. By ruling on the basis of Davekos, the judge was impliedly ruling as well on the admissibility of the Ingenix data under §79B. Finding the data inadmissible under Davekos meant also finding it inadmissible under §79B. We discern no error.
Judgment affirmed.
So ordered.

 NEPT has not appealed the G.L.c. 93A finding in favor of Liberty.

 Davekos alternatively found the Ingenix data to be excludable on the ground of relevance because it did not include, for example, “data on the total number of times a particular [chiropractic] service was actually performed in a given area at any time, or what the actual dollar range of provider fees was for the service.” Id. at 35.

 In its trial brief in support of its motion in limine to offer the Ingenix data, Liberty posed arguments designed, apparently, to relitigate the conclusions this Division drew from the evidence in Davekos. The trial judge found the arguments unpersuasive, as do we.

 To quote the disclaimer: “The database is provided for informational purposes only and Ingenix disclaims any endorsement, approval or recommendation of data in the database.”

 In its brief, Liberty relied on Salafia v. Trust Ins. Co., 2000 Mass. App. Div. 242, and cases therein cited, to show that this Division has “previously approved of the admission of Ingenix or similar data into evidence.” In those cases, however, this Division was satisfied that the admissibility of the databases in issue had been properly established at the trial level, and none of those databases were those of Ingenix. Liberty has also cited numerous cases in other jurisdictions where the admission of Ingenix data into evidence has been approved, including one opinion submitted after oral argument. Taylor v. USAA Cas. Ins. Co., _ F. Supp. 3d _ (D. Ariz. April 4, 2011). It has cited no cases, and at oral argument Liberty’s counsel stated that he could find none, where a trial court has been reversed for excluding the data.