Viper Ventures, LLC (Viper), brought this action for breach of contract to collect on three promissory notes, each of which was guaranteed by one or more of the defendants. After the defendants conceded liability, the case proceeded to a bench trial on damages. At trial Viper did not offer any financial records in evidence, but sought instead to prove its damages through the testimony of its manager, Ralph Caruso. Over the defendants' objections, the judge admitted Caruso's testimony relating to the amounts owed on each note and then ordered entry of judgment against the defendants as follows: $305,596.35 against Cheryl Corbett, $45,670.63 against Richard Warren, and $77,594.85 against Don Corbett Real Estate Corporation. Two of the defendants, Cheryl Corbett and Richard Warren, appeal, arguing that much of Caruso's testimony was inadmissible hearsay and violated the best evidence rule. We agree and thus vacate the portion of the judgment addressing damages and remand for further proceedings.
1. The defendants' admissions. As the judge ruled, the defendants made "significant substantive admissions" in their answer to the complaint, in papers they filed at summary judgment, and by failing to respond to Viper's requests for admissions. Consequently, the following facts are deemed admitted: the three notes were originally executed by Daniel Corbett, as trustee of the 27 Andover Street Trust, in favor of Danversbank and secured by mortgages on the property at 27 Andover Street (property). Defendant Cheryl Corbett guaranteed the first and second notes (in the principal amounts of $375,000 and $65,000), and she and defendant Richard Warren cosigned the third note (in the principal amount of $60,000).
In April of 2011, Danversbank assigned the notes to Viper.[3] That same month, Daniel Corbett filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. In March of 2014, the bankruptcy trustee sold the property and made payment to Viper from the proceeds of the sale, but the amount paid was substantially less than what was owed on the notes.
All three notes are currently in default. The first two notes carry default rates of eighteen percent per annum, and the third carries a default rate of six and one-half percent per annum. Furthermore, by guaranteeing the notes, the defendants are obligated to pay for the costs of enforcement, including reasonable attorney's fees.
2. Trial on damages. Over the defendants' objection, the judge allowed Caruso to use a chalk during his testimony. The chalk contained detailed figures and calculations regarding (1) the principal amounts owed on the notes when Viper acquired them; (2) the rent payment credits applied to interest on the first note; (3) the interest that accrued on each note up to March of 2014, the date Viper received the proceeds from the sale of the property; (4) the amount of the sale proceeds; (5) how the proceeds were applied to the principal and interest on each note; (6) the interest that accrued on each note from March of 2014 to the date of trial; and (7) the total amount, including principal, interest, and attorney's fees, due on each note. Reading from the chalk, Caruso testified as to these figures and calculations, down to the decimal point, over numerous objections from the defendants.
On cross-examination Caruso testified that he prepared the chalk with his attorney, using the "original records." He admitted that those records were the basis of his knowledge of the principal amounts owed on the notes when Viper acquired them. He also admitted that he did not know those amounts when he was deposed by the bankruptcy trustee years earlier in 2012. When asked whether he had any of the records with him, he stated that he had left them in his office.
3. Discussion. We review a judge's evidentiary rulings for abuse of discretion. See N.E. Physical Therapy Plus, Inc. v. Liberty Mut. Ins. Co., 466 Mass. 358, 363 (2013). Here, the defendants contend that the judge abused his discretion by allowing Caruso to testify as to the contents of the original records he relied on to arrive at the calculations contained in the chalk, without requiring him to submit the records themselves. We agree.
Much of Caruso's testimony was inadmissible hearsay, and potentially double hearsay, as it was offered to prove the contents of the original records.[4] His testimony also violated the best evidence rule, which requires a proponent to submit the original of a writing or record in order to prove the contents thereof, unless he can "show a sufficient excuse for its nonproduction." Commonwealth v. Driscoll, 91 Mass. App. Ct. 474, 480 (2017), quoting from Commonwealth v. Ocasio, 434 Mass. 1, 6 (2001). See Mass. G. Evid. § 1002 (2017). Viper made no such showing-offering only Caruso's testimony that he left the records in his office-and the judge did not make the necessary findings to excuse production of the originals. See Driscoll, 91 Mass. App. Ct. at 480.
We reject Viper's argument that Caruso's testimony was admissible because it was based on his personal knowledge, independent of his review of the documents. Again, Caruso conceded that the documents were the basis of his knowledge of the balance due on the notes, which was the starting point for his calculations.[5] Furthermore, Viper failed to lay any foundation to establish that Caruso had independent personal knowledge of the numerous other figures on the chalk, with the exception of the rent payments. Regarding that issue, Caruso testified that he personally received and deposited the rents, that there was one tenant, and that the tenant paid the same amount every month. As the defendants acknowledged at oral argument, this foundational testimony was sufficient to establish Caruso's personal knowledge of the amount of rent he received. But the remainder of his testimony was based on the chalk, which was in turn based on the original records and not his independent knowledge. As the testimony thus sought to prove the content of those records, it should not have been admitted. See Quinn Bros. v. Wecker, 414 Mass. 815, 822 (1993) (trustee could not testify as to interest costs charged to trust where his knowledge of those costs was based on hearsay documents); Sylvania Elec. Prods., Inc. v. Flanagan, 352 F.2d 1005, 1007-1008 (1st Cir. 1965) (admission of summary of data contained in work records violated best evidence rule, where witness testified that he had some original records at home). Cf. National Grange Mut. Ins. Co. v. Walsh, 27 Mass. App. Ct. 155, 158 (1989) (plaintiff failed to establish amount of damages where it submitted "[n]o voucher or other evidence of payment," instead relying on "a conclusory memorandum prepared by counsel").
For these reasons the portion of the judgment on the issue of damages is vacated, and the matter is remanded for proceedings consistent with this memorandum and order.[6] The judgment is otherwise affirmed.
So ordered.
vacated in part and remanded; affirmed in part.

At various points in their brief, the defendants assert that Viper failed to offer evidence of the assignment. Such evidence was unnecessary, however, because the judge deemed the fact of the assignment admitted as a consequence of the defendants' failure to respond to Viper's requests for admission. The defendants do not claim that the judge abused his discretion in this respect.

Had Viper submitted the records and established that they were made in the regular course of business, they would have been admissible under the business records exception to the hearsay rule. See Commonwealth v. Driscoll, 91 Mass. App. Ct. 474, 477 (2017).

According to the chalk, when Viper acquired the notes, the amounts owed were, respectively, $366,299.69, $52,154.37, and $37,262.87. Caruso's calculations were based on those starting figures.

Given our ruling, we need not reach the defendants' argument that the award of attorney's fees was an abuse of discretion.