Massing, J.
In denying the plaintiff developer’s request for a special permit to build a residential retirement community, the defendant zoning board of appeals of Lenox (board) was frank: “In general, Board members agreed that the proposed project was simply too dense and too out-of-character with its surroundings.” A judge of the Housing Court, sitting by designation in the permit session of the Land Court, reviewed the board’s decision under G. L. c. 40A, § 17, and after a bench trial, including a view of the project site, affirmed the denial of the special permit. We affirm.
Background. The plaintiff, Buccaneer Development, Inc. (Buccaneer), seeks to build a residential retirement community for individuals fifty-five years of age and older, consisting of twenty- *872 three single-family townhouses on twenty-three acres of land in the town of Lenox (town). The parcel, which is located on East Street in a residential zoning district, is adjacent to sixty-eight acres of protected open space to the north and northeast. It is situated between four single-family homes to the west, on lots ranging from .49 to 2.75 acres, and a 1950s era cul-desac development to the east, of seventeen modest single family homes on a total of 8.2 acres. To the south lies the Cranwell resort and associated properties, including a golf course, mansions, ten condominium units on one-acre lots, and a housing development of thirty-seven units on twenty-one acres. The public high school is located approximately eight-tenths of one mile north on East Street.
On June 22, 2007, Buccaneer submitted an application for a special permit to the board.[1] After a series of public hearings, the board voted 5-0 to deny the application on December 12, 2007, and its decision was filed on December 28, 2007. The decision records the board members’ reasons for denying the application. Citing various subsections of the applicable town zoning by-law (by-law), one member “noted that the proposed development was unduly dense and would be detrimental to the established ‘small town’ character of the neighborhood,” and another stated that “it was neither essential nor desirable to the public welfare at the proposed location.” A third member said “it was not in harmony with the general intent and purpose of the Bylaw, it was not desirable to the public welfare, it would be detrimental to adjacent uses and the established character of the neighborhood, and would exacerbate existing traffic hazards.” The two remaining members “concurred,” both noting that the requirements and purposes of the by-law were not satisfied.
Buccaneer sought relief from the board’s decision by filing a complaint under G. L. c. 40A, § 17, in the Land Court. As explained in Buccaneer Dev., Inc. v. Zoning Bd. of Appeals of Lenox, 83 Mass. App. Ct. 40 (2012) (Buccaneer I), on February 1, 2008, the board filed a notice of transfer, and over Buccaneer’s objections, the complaint was ultimately heard in the Housing Court. A judge of the Housing Court affirmed the board’s denial of the special permit on September 20, 2010, and a corrected judgment issued on December 14, 2010. Id. at 45. *873 Buccaneer appealed from the Housing Court judge’s decision, and we vacated the judgment on the ground that the Housing Court lacked subject matter jurisdiction under G. L. c. 185, § 3A. We remanded the case for redetemnination in the permit session of the Land Court, directing that “[t]he case shall be adjudged in light of the town by-law as it existed in December, 2007.” Buccaneer I, supra at 45 n.7.
On remand, the Chief Justice of the Trial Court, acting under G. L. c. 211B, § 9, designated the same Housing Court judge who had tried the case as a justice of the permit session of the Land Court, nunc pro tunc to February 1, 2008. The trial judge then issued an order to show cause why she should reopen the case rather than go forward on a “case stated” basis. See Mastriani v. Building Inspector of Monson, 19 Mass. App. Ct. 989, 991 (1985). Buccaneer responded that it did not object to the “case stated” procedure, but reserved its objection to “this Court exercising jurisdiction over this action in the first place.” The judge then adopted her prior findings and decision and, on April 8, 2014, re-entered the judgment affirming the board’s[2] denial of the special permit.[3]
Discussion. In an appeal from a trial court’s review of a decision of a municipal board under G. L. c. 40A, “we defer to the factual findings of the trial judge unless they are clearly erroneous. We review the judge’s determinations of law, including interpretations of zoning by-laws, de novo, but we remain ‘highly deferential’ to a board’s interpretation of its own ordinances.” Grady v. Zoning Bd. of Appeals of Peabody, 465 Mass. 725, 728-729 (2013) (citations omitted).
Buccaneer applied for a special permit to build a “retirement community,” the minimum requirements for which are set forth *874 in § 9.6 of the by-law, as amended through May 4, 2006.[4] The proposed project satisfied all of the special provisions set forth in that section. In this regard, we agree with the trial judge’s conclusion that “the density of the proposed project is well within the requirements of Section 9.6,” and that the board had no basis to deny the special permit under the square footage, acreage, frontage, or setback provisions included in that section.
However, “[ejven if the record reveals that a desired special permit could lawfully be granted by the board because the applicant’s evidence satisfied the statutory and regulatory criteria, the board retains discretionary authority to deny the permit.” Davis v. Zoning Bd. of Chatham, 52 Mass. App. Ct. 349, 355 (2001). “[T]he decision of the board can only be disturbed ‘if it is based “on a legally untenable ground” ... or is “unreasonable, whimsical, capricious or arbitrary.” ’ ” Subaru of New England, Inc. v. Board of Appeals of Canton, 8 Mass. App. Ct. 483, 486 (1979), quoting from Gulf Oil Corp. v. Board of Appeals of Framingham, 355 Mass. 275, 277 (1969).
Section 6.1.1 of the by-law enumerates five factors the board must consider in determining whether to grant a special permit. Two of these factors are more or less objective: the board must find that the proposed use “(d) [wjill not create undue traffic congestion, or unduly impair pedestrian safety” and “(e) [w]ill not overload any public water, drainage or sewer system” or similar municipal facilities. The board found “no significant impact to the existing sewer system,” and only one member of the board voiced concern that the proposed development “would exacerbate existing traffic hazards.” We reject the board’s argument on appeal that it properly based its denial of the special permit on traffic congestion, crash data, or pedestrian safety. The trial judge specifically found that the evidence did not “support the conclusion that the proposed project would increase traffic congestion or adversely affect pedestrian safety,” and the board has not shown that the judge’s finding in this regard was clearly erroneous.
Nonetheless, the three other criteria in § 6.1.1 of the by-law specifically require the board to consider more subjective factors and not to grant a special permit unless it finds that the proposed use “(a) [ijs ... in harmony with [the by-law’s] general intent and *875 purpose; (b) [i]s essential or desirable to the public conveniences or welfare at the proposed location; [and] (c) [w]ill not be detrimental to adjacent uses or to the established or future character of the neighborhood.” The board’s denial of the special permit was firmly grounded in its assessment that the proposed use failed to meet these criteria.
The facts found by the trial judge provide support for the board’s determination. The judge found that “the proposed project would significantly alter the area in the immediate vicinity” of the project:
“[T]here now exists 23 acres of open land, abutting 68 acres of similarly open land immediately to the north; the overall impression is one of open space, pasture, and indigenous vegetation. Were the project to go forward, there would be 23 single family homes, similar in appearance, clustered around a parkway in a manicured setting.... [F]rom the perspective of the immediate neighborhood, the Buc[c]aneer project would represent a[ ] substantial change in the appearance and ‘feel’ of the area. At some point, development in an area reaches a ‘tipping point;’ the fact that past development has not been viewed as incompatible with the neighborhood does not mean that incremental additional development must always be viewed similarly.”
“particularly where the judge conducted a view,” we are reluctant to disturb her findings. Bernier v. Fredette, 85 Mass. App. Ct. 265, 275 (2014).
“We do not consider this to be one of the exceptional cases where a board can be ordered to grant a special permit.” Subaru of New England, Inc. v. Board of Appeals of Canton, 8 Mass. App. Ct. at 488. This case is unlike MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 639-640 (1970) (board did not provide an adequate statement of its reasons for denying the special permit and committed numerous errors of law in the process), Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 298 (1972) (board’s findings inadequate, “amount[ing] to little more than a mere recitation of the statutory and by-law standards” and “indicating] that the board did not have sufficient evidence before it to make the necessary findings”), or Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 485 (2012) (board failed “to apply its own standards *876 rationally”). Here, the board acted within its discretion, consistent with the facts on the ground, and conformably with the applicable by-law.
Conclusion. The judgment of the Land Court dated April 8, 2014, is modified by deleting “Planning Board” and inserting “Zoning Board of Appeals” and by deleting “dated December 21, 2007,” and inserting “filed December 28, 2007.” As so modified, the judgment is affirmed.[5]

So ordered.

Under § 6 (“Use Regulations”) of the town’s zoning by-law, as in effect at the relevant time, a special permit was required to build a retirement community in a residential (R1A) zone.

See note 5, infra, and accompanying text.

Although these procedures in response to Buccaneer I essentially put Buccaneer in the same posture it was in before we issued that decision, Buccaneer does not challenge the propriety of these procedures in this appeal. Regarding the designation, we observe that the Chief Justice of the Trial Court by statute possesses “the power to assign a justice appointed to any department of the trial court to sit in any other department of the court, for such period or periods of time as he deems will best promote the speedy dispatch of judicial business.” G. L. c. 211B, § 9(xi), as appearing in St. 2011, c. 93, § 52. See St. Joseph’s Polish Natl. Catholic Church v. Lawn Care Assocs., 414 Mass. 1003, 1004 (1993) (approving use of interdepartmental assignment to cure jurisdictional defect nunc pro tunc).

The by-law was admitted as an exhibit at trial. Given our disposition of this case, we do not address the board’s claim that subsequent amendments to the by-law have rendered this appeal moot.

Evidently, by the time the final judgment issued, the trial judge had lost sight of the fact, noted in her 2010 findings of fact, that, while the case originally also involved an appeal from the planning board of Lenox’s denial of an application for a special permit under a different section of the by-law, “[t]hat aspect of the dispute has been resolved ... and is not... before the court.” The parties appear to have proceeded before us on the assumption that the final judgment is, in fact, an affirmance of the decision of the zoning board of appeals, rather than of the planning board, and we have modified the judgment accordingly.