The plaintiff, Luc Saint-Fort, appeals from an order of the Housing Court allowing defendant Marie Lydie Sanon-Desir's motion for specific performance. We affirm.
Background. The facts, which are undisputed and are supplemented where necessary with uncontroverted evidence drawn from the record, are as follows. The plaintiff, owner of record of 681 Plain Street in Brockton (premises), obtained a mortgage on the premises on May 23, 2007, in his name alone because the defendant did not have good credit. The plaintiff has never resided at the premises nor been responsible for maintenance or improvements on the premises. The defendant has resided in the premises since the year of purchase, 2007. There was never a rental agreement between the parties.
On November 17, 2015, the plaintiff filed a summary process summons and complaint in the Southeast Division of the Housing Court Department against the defendant and others. After the defendant filed a timely answer and counterclaims, including an allegation that the "[p]laintiff holds the premises as constructive trustee for the benefit of [the defendant]," the parties, through counsel, engaged in settlement negotiations.
Between December 9 and 14, 2015, counsel for both parties exchanged the following electronic mail messages (e-mails). On December 9, 2015, the plaintiff's attorney, Jack P. Milgram, sent an e-mail to the defendant's attorney, Stephanie M. Herron Rice, asking: "Have you spoken to your client about paying off the mortgage? Is this a realistic option?" That same day, Attorney Herron Rice replied, in pertinent part:
"Yes, my client is currently in talks with Boston Community Capital. I do believe this is a realistic option as my client states she has been previously approved for a loan by BCC .... Is this an option that your client is open to? ... If I get confirmation from my client that she is working with BCC and she can provide pre-approval paperwork would you be opposed to continuing the [summary process] case so the deal has a chance to go forward?"
On December 14, 2015, Attorney Herron Rice e-mailed Attorney Milgram, stating, in pertinent part:
"Just writing to update you on this case. The client should have something in writing from BCC by tomorrow afternoon as she's meeting with them at 2pm. I'm assuming given the circumstances that your client is willing to sell this house for the outstanding loan amount (around $154k), is that the case? Please confirm."
On the same date Attorney Milgram replied: "Yes as to the purchase price. How much time does she need to get the loan?"
On January 20, 2016, the plaintiff and the defendant filed a summary process agreement for judgment (2016 agreement), which a Housing Court judge approved (the first judge). The 2016 agreement provided that the "[d]efendant will continue in her efforts to obtain a loan in order to buy the Premesis [sic ] from the [p]laintiff, should this occur prior to the vacate date [May 31, 2016], this case will be dismissed and no further use and occupancy will be owed by the Defendant under this Agreement."
On or about March 23, 2016,[3] Attorney Milgram filed a motion in the Housing Court to withdraw as plaintiff's counsel, stating that "a difference of opinion has developed between [himself] and the [p]laintiff ... as to what his legal obligations are pursuant to [the 2016 agreement]." The motion was allowed by a second judge. On March 28, 2016, this second judge then ordered, as requested by the defendant, the plaintiff to provide the defendant with a payoff statement for purposes of obtaining a loan, finding that the plaintiff had "failed to act in good faith" by obstructing the defendant's efforts to obtain the loan contemplated in the 2016 agreement.
On May 13, 2016, the defendant's new attorney sent a draft purchase and sale agreement to the plaintiff's new attorney, Donald Bertrand, via e-mail. Attorney Bertrand responded via e-mail stating that his "client is willing to sell the property to [the defendant]. He is not willing to sell this property for $160,000." After this exchange, the defendant filed on May 20, 2016, a motion seeking specific performance or, in the alternative, dismissal of the summary process action. On August 26, 2016, the first judge granted the defendant's motion for specific performance, reasoning that even if the parties' December e-mails and 2016 agreement did not satisfy the Statute of Frauds, the defendant detrimentally relied on the e-mail exchange in executing the 2016 agreement and giving up her defenses. The plaintiff challenges this order for specific performance.
Discussion. 1. Standard of review. Based on the pleadings, motions, affidavits, and answers to interrogatories from both parties, the first judge decided the case on certain undisputed facts. See Amerada Hess Corp. v. Garabedian, 416 Mass. 149, 152 (1993). As the first judge considered matters outside the pleadings, we treat the granted motion as one for summary judgment. See White v. Peabody Constr. Co., 386 Mass. 121, 126 (1982). "We review a grant of summary judgment de novo to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.' " Juliano v. Simpson, 461 Mass. 527, 529-530 (2012), quoting from Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).[4]
2. Satisfaction of the Statute of Frauds. The Statute of Frauds, G. L. c. 259, § 1, provides that "[n]o action shall be brought ... [u]pon a contract for the sale of lands ... [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." Whether a writing satisfies the Statute of Frauds is a question of law. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 709-710 (1992). "An enforceable agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms." Tareus Group Intl., Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010). "It is a court's function ... to determine what provisions are essential to an agreement sought to be enforced and whether an omitted provision can be supplied by implication." Simon v. Simon, 35 Mass. App. Ct. 705, 709 (1994). "A memorandum to satisfy the [S]tatute of [F]rauds need not be a formal document intended to serve as a memorandum of the contract; but it must contain the terms of the contract agreed upon-the parties, the locus (if an interest in real estate is dealt with), in some circumstances the price, ... and it must be signed by the party to be charged or by [someone] authorized to sign on his behalf." Des Brisay v. Foss, 264 Mass. 102, 109 (1928). E-mails may be writings that satisfy the Statute of Frauds and create a binding contract. See FecteauBenefits Group, Inc. v. Knox, 72 Mass. App. Ct. 204, 212-213 (2008). Multiple documents pertinent to a transaction may be read together to determine whether the Statute of Frauds has been satisfied. See Tzitzon Realty Co. v. Mustonen, 352 Mass. 648, 653 (1967). The writings may, but need not, incorporate each other by reference. Ibid. Parol evidence may be introduced to show that "two or more papers were so connected in the minds of the parties that they adopted all of them as indicating their purpose." Ibid. Massachusetts courts recognize the assumed authority of attorneys to enter into binding agreements on behalf of their clients. See Medford v. Corbett, 302 Mass. 573, 574-575 (1939).
The December 9 through 14, 2015, e-mails, taken together with the subsequent 2016 agreement, constitute a writing sufficient to satisfy the Statute of Frauds. The e-mails, electronically signed by counsel for both parties, were sent as part of settlement negotiations between the parties through their respective counsel. The settlement e-mails document a clear agreement "as to the purchase price" which would be set in the amount of the outstanding mortgage "around $154k" and document the plaintiff's intent that the defendant continue with "pre-approval" in pursuit of financing for that amount through "Boston Community Capital." On January 20, 2016, the parties entered into the 2016 agreement which obligated the defendant to "continue in her efforts to obtain a loan in order to buy the Premesis [sic ] ..." (emphasis added). The e-mails, sent in the context of litigation settlement, sufficiently identify the premises. The 2016 agreement established the deadline for the purchase: the 2016 agreement set May 31, 2016, as the vacate date and provided that the defendant had until such date to obtain financing necessary to purchase the premises. If the defendant was unable to meet the financing deadline, the 2016 agreement provided that the plaintiff could levy on the execution as of June 1, 2016. Therefore, based on the uncontested material facts, the writings were sufficient to satisfy the Statute of Frauds.[5]
3. Specific performance. We next turn to the plaintiff's contention that the first judge's grant of specific performance was unwarranted. A judge has a reasonable range of discretion in determining whether to grant or to deny specific performance. See Atlantic Richfield Co. v. Couture, 4 Mass. App. Ct. 230, 234 (1976). Accordingly, "we examine the judge's decision from the viewpoint of whether there has been an abuse of discretion." Quinn v. Mar-Lees Seafood, LLC, 69 Mass. App. Ct. 688, 705 (2007). Specific performance of contracts to convey land is usually granted unless there is fraud or overreaching by the seeking party. See Allen v. Rakes, 359 Mass. 1, 6 (1971). "It is well-settled law in this Commonwealth that real property is unique and that money damages will often be inadequate to redress a deprivation of an interest in land." Greenfield Country Estates Tenants Assn., Inc. v. Deep, 423 Mass. 81, 88 (1996). "Specific performance of real estate contracts is appropriate 'in the absence of significant equitable reasons for refusing such relief.' " Costello v. Pet Inc., 17 Mass. App. Ct. 382, 387 (1984), quoting from Raynor v. Russell, 353 Mass. 366, 367-368 (1967). We perceive no abuse of discretion in allowing the order for specific performance.[6]
Order entered August 26, 2016, allowing specific performance, affirmed.

The motion is dated March 21, 2016, whereas the certificate of service is dated March 22, 2016, and the motion was docketed March 23, 2016.

Although the plaintiff demanded an evidentiary hearing, he did not sufficiently identify any genuine issue of material fact.

As we conclude that the 2016 agreement and the December, 2015, e-mails, taken together, satisfy the Statute of Frauds, we need not reach the detrimental reliance argument.

To the extent that the plaintiff challenges the Housing Court's jurisdiction and the judge's authority to order specific performance in this matter, we consider any such argument waived as he has not briefed this issue sufficiently. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Additionally, "we observe that the Chief Justice of the Trial Court by statute possesses 'the power to assign a justice appointed to any department of the trial court to sit in any other department of the court, for such period or periods of time as [she] deems will best promote the speedy dispatch of judicial business.' G. L. c. 211B, § 9(xi), as appearing in St. 2011, c. 93, § 52. See St. Joseph's Polish Natl. Catholic Church v. Lawn Care Assocs., 414 Mass. 1003, 1004 (1993) (approving use of interdepartmental assignment to cure jurisdictional defect nunc pro tunc)." Buccaneer Dev., Inc. v. Zoning Bd. of Appeals of Lenox, 87 Mass. App. Ct. 871, 873 n.3 (2015).