NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1609                                              Appeals Court


CLEAR CHANNEL OUTDOOR, INC., & another[1]  vs.  ZONING BOARD OF
APPEALS OF SALISBURY & others.[2]


No. 17-P-1609.

Essex.     September 10, 2018. - December 18, 2018.

Present:  Wolohojian, Massing, & Lemire, JJ.


Billboard.  Zoning, Billboards, Special permit, Person
    aggrieved, Board of appeals:  decision.  Practice, Civil,
    Zoning appeal, Standing, Entry of judgment, Judicial
    discretion.



Civil action commenced in the Superior Court Department on
July 17, 2014.

The case was heard by Joshua I. Wall, J.


Jason R. Scopa for the plaintiffs.
David J. Gallagher for Northvision, LLC.
Jackie Cowin for zoning board of appeals of Salisbury.

---

[1] Checkpoint Charlie, LLC, trustee of the Checkpoint Charlie
Nominee Trust.

[2] Northvision, LLC; and Herman Fortin, trustee of the
Countryside Realty Trust.

WOLOHOJIAN, J.  At issue here are two abutters'
(Northvision, LLC [Northvision] and Clear Channel Outdoor, Inc.
[Clear Channel][3]) competing efforts to erect digital billboards
in the town of Salisbury.  Only one such application could
succeed because no two digital billboards may be erected within
1,000 feet of each other.  700 Code Mass. Regs. § 3.17(5)(g) and
(h) (2012).  The ultimate decision as to whether a digital
billboard (and which one, in the case of competing proposals) is
approved rests with the Department of Transportation Office of
Outdoor Advertising (OOA).  However, an applicant must first
receive local zoning board approval before applying to the OOA.
See 700 Code Mass. Regs. § 3.06(1)(i) (2012).

Unhappy with this two-step regulatory framework, two
members of the Salisbury zoning board of appeals (board) decided
to defeat it by approving only one of the two competing
applications for a special permit that were simultaneously
before the board for decision.  For purposes of this litigation,
all parties have accepted that both applications met the

---

[3] The two properties are located at 74 and 75 Main Street,
Salisbury.

Clear Channel Outdoor, Inc. is the permit applicant for 74
Main Street, and Checkpoint Charlie Nominee Trust is the
property owner.  We refer to them collectively as Clear Channel,
except where otherwise necessary.

The property at 75 Main Street is owned by Countryside
Realty Trust, and the permit applicant is Northvision, LLC; we
refer to them collectively as Northvision.

criteria necessary for a special permit.[4]  The two board members who nonetheless voted to deny Clear Channel's application admittedly did so on impermissible grounds.  Acting ultra vires in this way, they ensured that only Northvision's application could (and did) proceed to the OOA.  The OOA was thus deprived of its opportunity to consider the competing Clear Channel application (which the parties agree met the requirements for zoning approval), and its ability to decide which of the two

---

[4] Chapter 214 of the Salisbury bylaw is entitled "Signs" and § 214-12 is entitled "Appeals."  Section 214-12.B provides:

> "The applicant of the appeal for the relaxation of these bylaws and the issuance of a special permit must be able to prove to the satisfaction of the Board:  (1) There is a hardship of the condition of the land or preexisting building location which necessitates the granting of the special permit.  (2) The granting of the special permit will not have a negative effect on surrounding property values.  (3) Sign scale is appropriate in relation to development scale, viewer distance and travel speed and sign sizes on adjacent properties.  (4) Sign materials, colors, lettering style and form are compatible with building design and use.  (5) The issuance of the special permit is not contrary to the purpose of this bylaw."

Both Northvision's and Clear Channel's applications required relief from certain sections of the bylaw.  For example, § 214-8.E prohibits "electronic message boards," and § 214-8.B limits sign heights to twenty feet above grade at the entrance to the property.  Northvision's sign was to be eighty-nine feet high and Clear Channel's sign was to be fifty-five feet high.  The parties and the judge assume that the board had the authority to waive those provisions under the "Appeals" section of the bylaw. While we have some skepticism as to the board's authority, the issue is not briefed and the parties have stipulated that both Northvision's and Clear Channel's applications met the criteria for a special permit.

competing proposals should be approved within this particular 1,000 foot stretch in Salisbury.

For the reasons set out below, we conclude that the board's decisions must be set aside because they rest on legally impermissible grounds.

Background. Clear Channel commenced this action pursuant to G. L. c. 40A, § 17, seeking to overturn the board's decision granting Northvision's special permit application and denying its own application.[5,6] Clear Channel claimed that (a) two of

---

[5] Northvision's application proceeded as follows. Herman Fortin, as trustee of Countryside Realty Trust, submitted an application for an electronic billboard at 75 Main Street dated April 8, 2014. On April 10, 2014, the building inspector informed Fortin that due "to the size and type of the proposed signage" the request was denied, but advised that Fortin had the option of applying to the board within thirty days to seek a special permit pursuant to § 214-12 of the Salisbury bylaw. Northvision, on behalf of Countryside Realty Trust, submitted a special permit application on May 8, 2014. After a hearing, the board approved the special permit. The OOA granted Northvision a license to erect an electronic billboard on July 30, 2014.

[6] Clear Channel's application proceeded as follows. Clear Channel submitted to the building inspector a building permit application for the placement of a freestanding sign at 74 Main Street. Although the date of Clear Channel's application is not clear from the record, the parties agree that it was submitted a week or more after Northvision's application. On May 20, 2014, the building inspector informed Clear Channel that its building permit application was denied due to the size and shape of the proposed sign. The building inspector also informed Clear Channel that it had the option of appealing to the board for a special permit. On May 21, 2014, Clear Channel filed an application for a special permit with the board. The board conducted a hearing on the special permit application on the same date it heard Northvision's application. The board denied Clear Channel's application.

the four board members had clear conflicts of interest that rendered them ineligible to vote on Northvision's application, and (b) Clear Channel's proposal was superior to Northvision's.[7] As to the first claim, Clear Channel pointed to the fact that Kevin Henderson and Edwin Hunt, Sr., the two board members who voted to approve Northvision's application and deny Clear Channel's application had connections to Northvision.[8]

After Northvision's motions to dismiss and for summary judgment were denied, and after the parties submitted their first joint pretrial memorandum, the board took the unusual step of filing a "motion for entry of judgment," admitting that the board had no proper basis to deny Clear Channel's application for a special permit and urging that judgment be entered against itself.[9]  The board conceded that Hunt and Henderson, the two

---

[7] Deciding as we do, we need not reach this second issue.

[8] More specifically, Clear Channel asserted that (1) Henderson is employed by a company also owned by the owner of Northvision, Wayne Capolupo; and (2) Hunt is a first cousin once removed of Herman Fortin, trustee of the owner of the property on which Northvision's proposed billboard was to be erected. Henderson disclosed to the town manager, who we assume is the appointing authority, that he was "an officer, director, trustee, partner, or employee of a business organization [that] has a financial interest in the matter"; the town manager nonetheless authorized him to vote on the matter.

[9] The motion was not made pursuant to any rule of civil procedure and, in fact, the motion does not appear to be governed or expressly permitted by any rule.  Nor have we found any precedent identifying the standard to be applied in ruling

board members who had voted to deny Clear Channel's special permit application, had considered factors that were irrelevant to the zoning scheme and that "would not withstand judicial scrutiny."  In its motion, the board acknowledged that "[t]he proposals at issue here call for the two billboards to be located within 1,000 feet of each other; thus only one can be approved by the State.  The two [b]oard members who voted to deny Clear Channel's application testified at deposition that they were aware of the State Regulation, they believed the determination as to which billboard should be built should be up to local authorities, and they approved Northvision's application over Clear Channel's because [Northvision's] was filed first."

The board's motion for entry of judgment was opposed by Clear Channel and Northvision.  Clear Channel's opposition expressed a desire not to limit the issues at trial and to

_____

upon a party's motion for entry of judgment against itself.  But where, as here, such a motion is made over opposition, it is incumbent upon the motion judge to ensure that allowing the motion will not have unfair or unintended consequences for the nonmoving party, especially if those consequences affect the remaining parts of the case.  For example, here, the allowance of the board's motion for entry of judgment on the Clear Channel permit was subsequently used by Northvision (and the trial judge) as the basis for excluding evidence that was otherwise relevant and admissible in the portion of the case relating to Northvision's permit.  The collateral consequences of allowing such a motion should be thoroughly considered before ruling on it.

litigate both decisions to ensure that the finder of fact hear the entire story and overturn both decisions. The board's motion was allowed by the motion judge and, on July 26, 2016, judgment was entered against the board, ordering it to issue a special permit to Clear Channel. Both Clear Channel and Northvision filed timely notices of appeal.

On August 22, 2016, Clear Channel filed a motion for entry of judgment requesting the rescission of the grant of special permit to Northvision, arguing that -- given the board's admission in its motion for entry of judgment -- Northvision's special permit could not withstand judicial scrutiny. The motion was denied.

What remained for trial, therefore, was only Clear Channel's claim that the board improperly granted Northvision's special permit application. However, the trial judge allowed Northvision's two motions in limine, one seeking to bar evidence regarding Hunt's and Henderson's conflicts of interest and the "mental processes" of all board members in granting Northvision's special permit, and the second seeking to "exclude any evidence of the [board's] denial of" Clear Channel's application for a special permit. Thus limited to the narrow issue of whether Northvision's special permit application complied with the local bylaw and regulations, which Clear Channel had already conceded, the trial was short. After first

deciding Clear Channel lacked standing, the trial judge also rejected Clear Channel's claims on the merits and determined that Clear Channel had not proved "that the [b]oard acted unreasonably, whimsically, or arbitrarily in granting the Northvision Special Permit." Clear Channel appealed from the ensuing judgment entered on December 7, 2017.

Discussion. Standing. Keeping in mind that both Clear Channel Outdoor, Inc. and the property's owner, Checkpoint Charlie Nominee Trust (Checkpoint Charlie), were the plaintiffs below and the appellants on appeal, we first consider whether in the circumstances of this case, they have standing to challenge the special permit granted to Northvision. Only one of the plaintiffs must be an "aggrieved person" under G. L. c. 40A to establish standing. See 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 697 n.10 (2012), and cases cited. The trial judge concluded that Clear Channel Outdoor, Inc. lacks standing because its harms arise from impaired business competition and are purely economic, which are not interests sought to be protected by the zoning code. We agree that it is well-settled that the purpose of zoning regulations is not to protect businesses from competition. Circle Lounge & Grille, Inc. v. Board of Appeal of Boston, 324 Mass. 427, 429-430 (1949). Thus, a person alleging injury from a zoning decision due to an increase in competition is not a "person

aggrieved" for purposes of an appeal under G. L. c. 40A, § 17. See id.

However, more is at issue here than business competition. As an abutting owner, Checkpoint Charlie enjoys a presumption of standing. 81 Spooner Rd., LLC, 461 Mass. at 700. Moreover, under the interdependent local and State license requirements at issue here, the decision granting a special permit to Northvision for construction of an electronic billboard within 1,000 feet of Checkpoint Charlie's property directly affects what is allowed to be built on Checkpoint Charlie's property. Impacts on use and enjoyment of one's own property are clearly interests protected by the zoning bylaw. We conclude, therefore, that Checkpoint Charlie has standing to appeal from the board's decision to grant a special permit to Northvision.[10]

Motions in limine. We agree with Clear Channel that in the circumstances of this case the trial judge abused his discretion in allowing Northvision's motions in limine to prohibit evidence of the board members' "mental processes" and the reasons the board members voted to deny Clear Channel's application and approve Northvision's application. See N.E. Physical Therapy Plus, Inc. v. Liberty Mut. Ins. Co., 466 Mass. 358, 363 (2013)

---

[10] Because only one party need have standing, we need not consider Clear Channel Outdoor, Inc.'s independent status as a person aggrieved.

("We review a trial judge's evidentiary decisions under an abuse of discretion standard"). Henderson and Hunt each testified at deposition that they believed that the choice between the two competing billboards should be up to the local authority, not the State entity. In order to accomplish this end, they voted against Clear Channel, choosing Northvision because its application was filed first. The board conceded that, in casting their votes as they did, Henderson and Hunt considered factors that were irrelevant to the zoning scheme and that would not withstand judicial scrutiny. When a board "injects criteria not found in the enabling act," its decision is legally untenable. Dowd v. Board of Appeals of Dover, 5 Mass. App. Ct. 148, 156 (1977). Given the admissions made by the board, Clear Channel should have been allowed to explore the board members' reasons for granting Northvision's application in order to meet its burden to demonstrate that the board's decision was arbitrary, capricious, or legally untenable.

Northvision argues that examination of the mental processes of administrative decision makers is appropriate only "in extraordinary circumstances where there is a strong showing of improper behavior or bad faith on the part of the administrator." New England Med. Center, Inc. v. Rate Setting Comm'n, 384 Mass. 46, 56 (1981). Even if Northvision's position is generally correct even as to discretionary zoning decisions

such as special permits, which we need not decide, we find it difficult to conceive that there is any stronger showing of improper behavior than the board's admission that it issued its Clear Channel and Northvision decisions based on legally irrelevant grounds, which the board itself characterized as "unrelated to zoning interests" and unable to "withstand judicial scrutiny." The board's efforts on appeal to characterize its improper considerations as affecting only Clear Channel's application are unavailing in light of the admission in its motion for entry of judgment that the same considerations were taken into account when granting Northvision's special permit.

To the extent Northvision argues that it met all the special permit criteria and, therefore, the board's consideration of extraneous factors is irrelevant, Northvision ignores that a special permit has both a discretionary and objective component. "Even if the record reveals that a desired special permit could lawfully be granted by the board because the applicant's evidence satisfied the statutory and regulatory criteria, the board retains discretionary authority to deny the permit." Buccaneer Dev., Inc. v. Zoning Bd. of Appeals of Lenox, 87 Mass. App. Ct. 871, 874 (2015), quoting Davis v. Zoning Bd. of Chatham, 52 Mass. App. Ct. 349, 355 (2001). Thus, although the parties have accepted for purposes of this

litigation that the board <u>could</u> approve Northvision's special permit application, it does not follow that the board was <u>required</u> to. Therefore, the board's reasons for granting Northvision's special permit are relevant. We cannot be certain on this record that the board's consideration of legally irrelevant factors did not infect its decision as to Northvision's application.

<u>Conclusion</u>. For the reasons set out above, the decisions of the board must be set aside. The judgments of the Superior Court entered on July 26, 2016, and December 7, 2017, are vacated. A new judgment is to be entered (a) annulling the decision of the board allowing Northvision's special permit application, (b) annulling the decision of the board denying Clear Channel's special permit application, and (c) directing the board to hold such further proceedings as may be necessary on the two applications, conducted in such manner as not to defeat the two-step, municipal-State process contemplated by the Legislature.

<u>So ordered</u>.