NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1450

JOSEPH D. COGLIANO, JR.,[1] & others[2]

vs.

PLANNING BOARD OF NORTON & others[3] (and a consolidated case).[4]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This is the second appeal brought by Joseph D. Cogliano, Jr., and four other abutters (collectively, abutters) in this litigation involving a large solar photovoltaic installation (solar installation) that NextSun Energy LLC (NextSun) has proposed locating in the town of Norton. The proposed installation includes approximately 10,540 tracking solar panels

---

[1] Individually and as trustee of the Joseph D. Cogliano Realty Trust and the Eleanor E. Cogliano Realty Trust.

[2] Charles Gallagher, Kelly Gallagher, Marianne Johnson, and Joel P. Johnson.

[3] Town of Norton and NextSun Energy LLC.

[4] NextSun Energy LLC & another vs. Planning Bd. of Norton & another.

and a lithium-ion battery energy storage system and will be built on approximately twenty-three acres of upland cranberry bogs.  The installation was also the subject of a prior appeal by the abutters.  In an unpublished memorandum and order issued in their first appeal, a different panel of this court upheld certain amendments to the town's zoning bylaw that make it easier to obtain approval of solar installations, including on cranberry bogs.  See Cogliano v. Planning Bd. of Norton, 101 Mass. App. Ct. 1114 (2022) (Cogliano I).  In this second appeal, the abutters challenge several rulings issued by the Land Court judge at different points in the litigation, including his 2021 summary judgment order directing the planning board of the town of Norton (board) to issue NextSun a floodplain special permit, his decision following trial in 2023 that the energy storage system is a necessary and integral part of the solar installation and therefore within the scope of uses allowed under the amended zoning bylaw, and his removal of two conditions of the board's site plan decision relating to water quantity and quality testing.  In its cross-appeal, NextSun contends that the abutters do not have standing to challenge the planning board's decisions based on the risk of fire in the energy storage system, and that the judge abused his discretion in allowing into evidence a diagram prepared by the abutters'

2

hydrology expert.  We affirm the amended judgment in all respects.

Background.  In 2018, NextSun applied to the board for site plan approval and a floodplain special permit to build its proposed solar installation.  As we summarized in our earlier decision, the board initially denied NextSun's requests for site plan approval and a floodplain special permit.  In May 2019, NextSun initiated the first of the Land Court actions by appealing the denial under G. L. c. 40A, § 17, and G. L. c. 240, § 14A.  In June 2019, the abutters moved to intervene in the action, arguing that the municipal entities sued by NextSun would not adequately represent their interests.  The judge denied the abutters' motion.  After NextSun reduced the size of the solar panel installation, the parties agreed to a remand so that the board could consider the amended plan.  On remand, the board granted site plan approval subject to sixty-four conditions, but again denied the floodplain special permit. NextSun amended its complaint to add a count challenging the board's remand decision.  In June 2019, the abutters filed the second lawsuit in the Land Court challenging Norton's solar bylaw amendments and the notice provided for the board hearing. The abutters then filed a third lawsuit in November 2019 appealing the board's approval of the amended site plan.

3

In 2020, NextSun and the municipal parties cross-moved for summary judgment in all three cases. In February 2021, the judge issued a summary judgment order that, in part, dismissed the abutters' challenge to the amended zoning bylaw and concluded that the board erred in denying the floodplain special permit. The judge reserved for trial whether NextSun's inclusion of battery storage in the installation was within the scope of uses allowed under the amended zoning bylaw. Following his summary judgment order, the judge issued a separate and final judgment under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), ordering the board to issue the special permit, and stating that "[t]his will allow the issuance of the floodplain special permit . . . , while at the same time allowing the [abutters] to appeal the judgment . . . so that all the questions decided in [the summary judgment decision] can be addressed at once." The abutters appealed from this judgment as well as the judge's order denying their motion to intervene in the first action, and this court affirmed both. See Cogliano I, 101 Mass. App. Ct. 1114.

In April 2021, while the abutters' first appeal was pending, the board granted NextSun a floodplain special permit, and the abutters amended their complaint to challenge it. After a trial in May 2022, the judge issued a thoughtful and detailed

4

decision setting forth his findings and conclusions.  The judge
concluded that the abutters are "aggrieved" persons within the
meaning of G. L. c. 40A, § 17, and the floodplain special permit
was properly issued.  The judge further concluded that the
board's site plan approval satisfies the requirements of the
zoning bylaw, but remanded two of the conditions imposed by the
board for further consideration.  The judge initially upheld two
other conditions involving the surveying and monitoring of water
impacts, conditions 19 and 56, but reconsidered after NextSun
moved to alter or amend the judgment under Mass. R. Civ. P.
59 (e), 365 Mass. 827 (1974).  In an amended judgment, the judge
remanded conditions 19 and 56 for reconsideration by the board
also.

Discussion.  1.  Waiver of the abutters' challenges to the
2021 summary judgment decision.  In the present appeal, the
abutters make various arguments challenging the judge's decision
in 2021 to order the planning board to issue a floodplain
special permit.  They argue, for example, that the judge erred
by purportedly applying the Dover Amendment, G. L. c. 40A, § 3,
to override the planning board's decision, and that the board
acted within its authority by denying the floodplain special
permit in order to protect the public health, safety, and
welfare.  The abutters waived these issues, however, by failing

5

to raise them in their first appeal.  See Gutierrez v. Massachusetts Bay Transp. Auth., 442 Mass. 1041, 1042-1043 (2004); City Coal Co. of Springfield v. Noonan, 424 Mass. 693, 695 (1997) (City Coal Co.).  In City Coal Co., the defendant argued for the first time in his second appeal that prejudgment interest on an award of damages in the judgment should have been calculated at a lower rate.  City Coal Co., supra.  The Supreme Judicial Court held that, "[w]hatever the merits of that argument, it is too late to make it.  The point could have been raised, but was not, on [the defendant's] appeal to the Appeals Court because the issue was apparent on the face of the judgment."  Id., citing Frank D. Wayne Assocs., Inc. v. Lussier, 394 Mass. 619, 621-623 (1985).  See Levenson v. Brockton Taunton Gas Co., 5 Mass. App. Ct. 883, 884 (1977) (noting "a regrettable tendency to attempt belated or successive bites at the appellate apple").

Following the judge's summary judgment order in 2021, a separate and final judgment issued under rule 54 (b) annulling the board's decision denying NextSun's application for a floodplain special permit and ordering it to issue a permit within thirty days.  The judge explained that entry of this final judgment would allow the abutters to appeal from the judgment so that "all the questions" in the order could be

6

"addressed at once."  The abutters did appeal from the judgment and raised a variety of issues, including the validity of the applicable zoning bylaw amendments and asserted procedural errors.

The abutters now argue that they could not have challenged in their first appeal the judge's order compelling the board to issue the floodplain special permit because the judge denied their motion to intervene in the action brought by NextSun.  As we explained in our earlier decision, however, "intervention in the NextSun action was not required in order for [the abutters] to protect their interests as a practical matter" because the only specific harm cited by the abutters was the absence of standing to appeal "the portion of the . . . separate and final judgment in which the [floodplain special permit] decision was annulled," and "the abutters have raised this same issue and challenge the issuance of the floodplain special permit in the third lawsuit, the abutter remand action."  Cogliano I, 101 Mass. App. Ct. 1114.  NextSun and the municipal parties cross-moved for summary judgment in all three cases, and the abutters acknowledged that "they were allowed to engage in discovery, participate in hearings, and engage in summary judgment briefing."  Id. at n.12.  Nor are we persuaded by the abutters' argument that the town's decision not to appeal the judge's

decision prevented them "from taking up the appeal themselves." Because the bases for the judge's decision ordering the board to issue the floodplain special permit were "apparent on the face of the judgment" from which the abutters initially appealed, they are precluded from challenging them in this second appeal. City Coal Co., 424 Mass. at 695.[5]

2. The 2023 posttrial decision and amended judgment.

a. The abutters' standing. In its cross-appeal, NextSun contends that the abutters lacked standing to challenge the planning board's decisions based on the risk of fire in the energy storage system. To have standing, the abutters must be "person[s] aggrieved" by the decisions. G. L. c. 40A, § 17. "Abutters entitled to notice of zoning board hearings enjoy a rebuttable presumption they are 'persons aggrieved.'" Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996). "However, an adverse party can challenge an abutter's presumption of standing by offering evidence 'warranting a finding contrary to the presumed fact.'" 81

_____

[5] As discussed below, the abutters may address a discrete issue that the judge did not resolve in his summary judgment order: whether NextSun's inclusion of an energy storage system in the solar installation falls within the scope of uses allowed under the zoning bylaw and the solar bylaw amendments. On that issue, the judge concluded that trial was required to resolve "facts in dispute as to the nature of the batteries to be used and the regulatory regime with respect to those batteries."

Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 700 (2012), quoting Marinelli v. Board of Appeals of Stoughton, 440 Mass. 255, 258 (2003). "The plaintiff always bears the burden of proving aggrievement necessary to confer standing; an abutter's presumption of standing simply places on the adverse party the initial burden of going forward with evidence." 81 Spooner Rd., LLC, supra at 701.

Because the judge found that NextSun presented sufficient evidence to refute the abutters' presumed fact of aggrievement, the abutters had to "prove standing by putting forth credible evidence to substantiate the allegations." 81 Spooner Rd., LLC, 461 Mass. at 701. They were required to "establish -- by direct facts and not by speculative personal opinion -- that [their injuries are] special and different from the concerns of the rest of the community." Barvenik v. Aldermen of Newton, 33 Mass. App. Ct. 129, 132 (1992). Following trial, the judge concluded that all the abutters "presented sufficient evidence to support standing based on fire risk," and that Cogliano also had standing "based on potential contamination of his private wells" resulting from runoff from firefighting in the event of a thermal runaway fire in the energy storage system.

Although NextSun argues that the risk of fire is too speculative to confer standing on any of the abutters, standing

9

is "a question of fact for the judge," and the judge's "ultimate findings on this issue will not be overturned unless shown to be clearly erroneous." Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 119 (2011), citing Marashlian, 421 Mass. at 722. A plaintiff's aggrievement must be more than "minimal or slightly appreciable," Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 213 (2020), and the plaintiff may not rest on "unsubstantiated claims or speculative personal opinions," Denneny v. Zoning Bd. of Appeals of Seekonk, 59 Mass. App. Ct. 208, 212 (2003), citing Monks v. Zoning Bd. of Appeals of Plymouth, 37 Mass. App. Ct. 685, 688 (1994). See Kenner, supra at 120. The judge found that the abutters presented sufficient evidence of the risk that a fire in the energy storage system could require them to evacuate, due to toxic gasses being vented into the atmosphere, and also could lead to contamination of Cogliano's wells as the result of toxic compounds in the firefighting water. NextSun contends that a thermal runaway fire will occur only if all the safety and design systems incorporated in the energy storage system fail, but its witnesses acknowledged a one- to two-percent annual incidence rate of fire in the energy storage system even when the safeguards are in place. In light of this evidence, the judge did not err in concluding that the risk to the abutters

10

was more than "minimal or slightly appreciable."  Murchison,
supra.

b.  Admission of pumping diagram.  NextSun also contends
that the judge erred in allowing the abutters to introduce a
diagram prepared by their hydrology expert showing the distance
from which Cogliano's wells can draw groundwater.  The abutters
did not produce this diagram until two weeks before trial, but
argued that it was consistent with their expert's prior
disclosures and deposition testimony.  At trial, NextSun's
expert testified about the asserted flaws of the diagram and the
assumptions upon which it was based.  Given these circumstances,
the judge did not abuse his discretion in allowing the diagram
into evidence.  See N.E. Physical Therapy Plus, Inc. v. Liberty
Mut. Ins. Co., 466 Mass. 358, 363 (2013).

c.  The energy storage system is an integrated part of the
solar installation.  In his 2021 summary judgment order, the
judge concluded that a trial was required to decide whether
NextSun's inclusion of an energy storage system in the solar
installation is within the scope of uses allowed under the
zoning bylaw and solar bylaw amendments.  After hearing evidence
at trial, the judge concluded that the energy storage system is
a necessary and integral part of the installation and regulated
as part of a single "as of right" use under the amended zoning

11

bylaw.  We agree.  In Tracer Lane II Realty, LLC v. Waltham, 489
Mass. 775, 780 (2022) (Tracer Lane), the Supreme Judicial Court
concluded that protections afforded to solar energy systems by
the Dover Amendment applied to an access road that was needed to
"facilitate the primary system's construction, maintenance, and
connection to the electrical grid."  Here, the judge found that
the energy storage system "stores the power produced from the
solar system and dispatches it to the electric grid in a stable
manner, leading to consistent and reliable output from the
project throughout the day regardless of the instant intensity
of sunlight hitting the panel."  In light of this finding, we
reject the abutters' contention that the energy storage system
"is neither necessary nor important to the generation of solar
energy."

d.  The board's grant of a floodplain special permit.  The
abutters argue that the judge erred in upholding the board's
grant of a floodplain special permit.

> "In an appeal from a trial court's review of a decision of
> a municipal board under G. L. c. 40A, 'we defer to the
> factual findings of the trial judge unless they are clearly
> erroneous.  We review the judge's determinations of law,
> including interpretations of zoning by-laws, de novo, but
> we remain highly deferential to a board's interpretation of
> its own ordinances.'"

Buccaneer Dev., Inc. v. Zoning Bd. of Appeals of Lenox, 87 Mass.
App. Ct. 871, 873 (2015), quoting Grady v. Zoning Bd. of Appeals

12

of Peabody, 465 Mass. 725, 728-729 (2013). "[T]he decision of the board can only be disturbed 'if it is based "on a legally untenable ground" . . . or is "unreasonable, whimsical, capricious or arbitrary."'" Subaru of New England, Inc. v. Board of Appeals of Canton, 8 Mass. App. Ct. 483, 486 (1979), quoting Gulf Oil Corp. v. Board of Appeals of Framingham, 355 Mass. 275, 277-278 (1969).

Under § 175-13.4.C of Norton's zoning bylaw, to grant the floodplain special permit, the board was required to find that NextSun's solar installation (1) will not fill or excavate, build a new structure, or substantially improve an existing structure in the floodway, and (2) will not increase the water surface elevation of a one-hundred-year flood. A "floodway" is defined in the zoning bylaw as "[t]he channel of a river or other watercourse and the adjacent land areas that shall be reserved in order to discharge the base flood without cumulatively increasing the water surface elevation." While there is no regulatory floodway designated for Mulberry Meadow Brook, a watercourse close to the planned solar installation, a professional wetland scientist retained by NextSun testified that the floodway covers an area around the brook that is

smaller than (or a subset of) the floodplain district.[6]

Crediting this testimony, the judge found that the floodway

constitutes "an area around" Mulberry Meadow Brook "that is

smaller than the floodplain."  The judge did not credit the

testimony of the floodplain specialist called by the abutters

who testified that the edge of the floodplain is the edge of the

regulatory floodway.

In its decision, the board made both findings required

under § 175-13.4.C, and the judge concluded that those findings

were reasonably supported by the evidence.  The abutters argue

that NextSun's plans show that certain components of the solar

installation will encroach not only on the land adjacent to

Mulberry Meadow Brook but on the brook itself.  The judge found,

---

[6] The zoning bylaw defines the floodplain overlay district as "all special flood hazard areas within the Town of Norton designated as Zone A or AE on the [map] issued by the Federal Emergency Management Agency (FEMA) for the administration of the National Flood Insurance Program."  § 175-13.1(1).  The judge found that the floodplain district is coterminous with FEMA Zone A.  Even though NextSun's application for a floodplain special permit assessed the impact on a larger floodplain, which its wetland scientists mapped using their own calculation of base flood elevation, the judge concluded that "the proper review was based on the smaller FEMA floodplain."  In addition, even though the abutters argue that NextSun should have conducted a more detailed study of the base flood elevation to "definitively identif[y] the boundaries of the floodway," we agree with the judge that there is "no requirement that NextSun engage FEMA to update their flood maps as a prerequisite to applying for a floodplain special permit."

14

however, that most of the installation's components, including the energy storage system and a planned area of regrading, are located outside of the floodplain overlay district and far from the brook.  The few components located within the floodplain overlay district, including utility poles and electrical conduit trenches in elevated dike roads, do not encroach on the floodway.  Based on those findings, the judge concluded that "the project does not include any plans to build a new structure, or substantially improve an existing structure in the floodway."  The facts found by the judge were amply supported by the record, and we do not discern any error in his interpretation of the zoning bylaw or other determinations of law.

e.  <u>The site plan conditions on surveying and monitoring of water impacts</u>.  Lastly, the abutters contend that the judge erred in effectively annulling two conditions of the board's site plan decision that would have obligated NextSun to perform boundary surveying and annual monitoring of water impacts. Under the zoning bylaw, the board may require conditions or modifications to a proposed site plan to ensure that certain objectives are fulfilled.  Condition 19 of the site plan decision required NextSun, as a condition of proceeding with construction, to produce and provide a report establishing a

baseline quality and quantity of water serving the property and the abutting property, along with "a finding that the proposed construction of the solar facility will not adversely impact water quality and quantity above the established baseline." Condition 56 required NextSun to annually "monitor for water quality and quantity impacts and demonstrate that the solar facility does not cause adverse impacts to wells of abutters who have agreed to allow [NextSun] and its successors access to private wells."

The judge initially found that conditions 19 and 56 were reasonable in light of evidence showing "the possibility of contamination of wells in the vicinity of the project in the event of a fire in the [energy storage system]." After NextSun moved to alter or amend the judgment, the judge remanded the imposition of these two conditions to the board for reconsideration, concluding that they "exceed the scope of what should be required" in the absence of a finding that the solar installation will "impact well water yield for private wells" or pose a risk of well water contamination except in the event of a fire. The abutters argue that the surveying and monitoring are required because large amounts of water may be needed to respond to a thermal fire in the energy storage system. However, condition 43 of the site plan decision, which remains intact

16

after the judge's decision, requires that an adequate water supply for fire suppression be "provided and maintained." Again, we do not discern any error in the judge's decision. Evidence at trial established that there is an adequate supply of water to respond to a thermal fire, and under condition 43, NextSun will be required to make "offsite improvements" in the event the town determines that the supply is inadequate.

<u>Amended judgment entered June 23, 2023, affirmed</u>.

By the Court (Desmond, Walsh & Toone, JJ.[7]),

Paul Little

Clerk

Entered: February 28, 2025.

---

[7] The panelists are listed in order of seniority.